**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Antoon v. Cleveland Clinic Found.,* **Slip Opinion No. 2016-Ohio-7432.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7432

ANTOON ET AL., APPELLEES, *v.* CLEVELAND CLINIC FOUNDATION ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Antoon v. Cleveland Clinic Found.,* Slip Opinion No. 2016-Ohio-7432.]**

*Statutes of repose—R.C. 2305.113(C) is constitutional even when applied to vested claims—*Ruther v. Kaiser *clarified—Judgment reversed and cause remanded.*

(No. 2015-0467—Submitted April 5, 2016—Decided October 25, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 101373, 2015-Ohio-421.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we consider whether Ohio's medical-malpractice statute of repose, R.C. 2305.113(C), applies to a cause of action that had vested for an act or omission allegedly constituting medical malpractice that took place more

than four years earlier. We hold that R.C. 2305.113(C) is a true statute of repose that applies to both vested and nonvested claims. Therefore, any medical-malpractice action[1] must be filed within four years of the occurrence of the act or omission alleged to have caused a plaintiff's injury. Appellees, David ("Antoon") and Linda Antoon (collectively the "Antoons"), filed their lawsuit after the statute of repose expired. The complaint was not protected by R.C. 2305.19, Ohio's saving statute, or 28 U.S.C. 1367, the tolling statute for state claims over which a federal court has supplemental jurisdiction because, as the Antoons admit in their merit brief to this court, the District Court "declined to exercise supplemental jurisdiction" over the malpractice claims. The District Court's action resulted in the Antoons never having the medical malpractice claims pending in the federal court. Because neither the saving statute nor the tolling statute applies in this case, we decline to determine whether they extend the time for filing beyond the expiration of the statute of repose. We reverse the judgment of the Eighth District Court of Appeals, hold that the trial court appropriately dismissed the case pursuant to the motion by the appellants, Cleveland Clinic Foundation (doing business as the Cleveland Clinic), and Drs. Jihad Kaouk, Raj Goel, and Michael Lee (collectively, the "Clinic")), and remand the cause to the trial court with instructions to enter judgment for the Clinic.

## RELEVANT BACKGROUND

*The Alleged Malpractice*

{¶ 2} The facts are not in dispute. On January 8, 2008, David Antoon underwent a prostatectomy at the Clinic. Drs. Kaouk, Goel, and Lee were involved in treating Antoon or performing the operation. Antoon did not experience the

---

[1] R.C. 2305.113 contains sections that explicitly extend the statute of repose for a plaintiff bringing a medical-malpractice claim under certain circumstances--for instance, when the injury involves a foreign object left in the body. R.C. 2305.113(D)(2). We recognize these important protections for plaintiffs, but we do not specifically address them, as they are not relevant to this case.

recovery he hoped for following surgery and spent nearly a year consulting with Dr. Kaouk and other Clinic practitioners regarding side effects of the surgery. December 11, 2008, was Antoon's final appointment with Dr. Kaouk.

*The First State Court Complaint*

{¶ 3} On December 9, 2009, Antoon timely notified the Clinic, pursuant to R.C. 2305.113(B), that he would be bringing medical-malpractice claims against them within 180 days. On June 6, 2010, the Antoons filed a complaint in the Cuyahoga County Common Pleas Court alleging medical malpractice and derivative claims against the Clinic and the doctors who provided care to Antoon. On June 13, 2011, the Antoons dismissed their claims without prejudice.

*The Federal Claims*

{¶ 4} Both before and after dismissal of their state case, the Antoons, acting pro se, filed a variety of actions in federal court and with federal agencies relating to Antoon's surgery. Relevant here is the qui tam action[2] that the Antoons filed without counsel in federal district court on January 31, 2012. The Antoons allege that the qui tam case, filed within one year of the dismissal of their common pleas court action, preserved their state claims pursuant to Ohio's saving statute, R.C. 2305.19(A). However, the Antoons' qui tam lawsuit did not allege medical malpractice and did not seek damages.

{¶ 5} On May 8, 2012, before the complaint was served, the Antoons, still acting pro se, amended their qui tam action. The amended complaint alleged that the Cleveland Clinic, its employees, and the manufacturer of equipment used during the surgery had violated the False Claims Act. On December 21, 2012, the defendants moved to dismiss the amended action.

---

[2] A qui tam action allows whistleblowing private citizens to file suit under the False Claims Act, 31 U.S.C. 3729, when they allege that a party is perpetrating fraud against the United States. 31 U.S.C. 3729(a)(1). Whistleblowers may obtain a reward for bringing the fraud to the government's attention. 31 U.S.C. 3730(d).

**{¶ 6}** On February 13, 2013, with the motion to dismiss pending, the Antoons, now having retained counsel, moved for leave to file a second amended complaint, which was attached to the filing. The offered second amended complaint named the Cleveland Clinic, manufacturing, and government defendants. It included the claims asserted in the two previous complaints but added state law medical-malpractice claims. On October 16, 2013, the district court denied leave and granted the defendants' motion to dismiss the first amended complaint. That holding was affirmed on appeal. *U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 620 (6th Cir.2015).

*The Second State Court Complaint*

**{¶ 7}** Following dismissal of their complaint by the federal court, on November 14, 2013, the Antoons, through counsel, filed a complaint in the Cuyahoga County Court of Common Pleas alleging state malpractice claims. The Antoons argue that their complaint was timely pursuant to 28 U.S.C. 1367(d), which tolls the period of limitations for any state claim over which a federal court has supplementary jurisdiction if the claimant asserted the claim in a federal court case. The period of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. 1367(d).

**{¶ 8}** The Clinic moved to dismiss pursuant to Civ.R. 12(B)(6), asserting that the Antoons failed to state a claim upon which relief could be granted because both the statute of limitations and statute of repose applicable to their claims had expired. The trial court granted the motion, finding that "the case was filed outside the applicable statute of limitations and outside the one year allowed by the Ohio saving statutes. Further, this filing is also outside the statute of repose, R.C. 2305.113(C) which requires that a medical claim be filed no more than four years after the alleged malpractice." The trial court determined the federal tolling statute, 28 U.S.C. 1367(d), applies only "to protect claims while pending in federal court."

4

According to the trial court, because the Antoons' motion to amend the complaint to add the malpractice claims was denied, the state claims were never pending and were not protected.

{¶ 9} The Antoons appealed, and the Eighth District Court of Appeals reversed the trial court's judgment. The appellate court relied on this court's decision in *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, syllabus, and concluded that once a claim has vested, the statute of repose can no longer operate to bar litigation. The appellate court's opinion acknowledges that vesting had occurred by the time the Antoons filed their first lawsuit on the matter in 2010.

*The Discretionary Appeal*

{¶ 10} We granted the Clinic's request for discretionary review to address a single proposition of law:

> Ohio's medical malpractice statute of repose applies whenever the occurrence of the act or omission constituting the alleged medical malpractice takes place more than four years prior to when the lawsuit is filed. This statute of repose applies regardless of whether a cause of action has vested prior to the filing of a lawsuit.

*See Antoon v. Cleveland Clinic Found.*, 143 Ohio St.3d 1463, 2015-Ohio-3733, 37 N.E.3d 1249.

**ANALYSIS**

*Statutes of Limitations and Statutes of Repose*

{¶ 11} Statutes of repose and statutes of limitation have distinct applications, though they are occasionally used interchangeably. Both share a common goal of limiting the time for which a putative wrongdoer must be prepared to defend a claim. *See CTS Corp. v. Waldburger*, __ U.S. __, 134 S.Ct. 2175, 2182,

189 L.Ed.2d 62 (2014). The differences between statutes of repose and statutes of limitation have been recognized for nearly 40 years. *Id.* at 2186. A statute of limitations establishes "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Black's Law Dictionary* 1636 (10th Ed.2014). A statute of repose bars "any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury." *Id.* at 1637.

**{¶ 12}** Our decision today is also informed by the robust heritage of decisions from courts and legislatures sharing the common beliefs that plaintiffs should litigate their claims as swiftly as possible and that defendants should not face potential liability indefinitely. We begin with a brief discussion of statutes of repose and limitation to provide context.

**{¶ 13}** Statutes of repose have a long history in Western legal tradition. One of the first statutes of repose in England, the country from which our legal system descended, appeared in the Limitation Act (1623), 21 James I, Chapter 16. Parliament enacted the statute for the purposes of "quieting * * * men's estates and avoiding * * * suits." *Id.*

**{¶ 14}** The Limitation Act set forth deadlines for bringing a variety of actions. The English Parliament fixed the time periods either to the end of the parliamentary session or the occurrence of the cause of action. *Id.* For instance, a plaintiff had to bring an "action upon the case for words," a suit similar to a present-day slander claim, "within one year after the end of this present session of Parliament, or within two years next after the words spoken, and not after." *Id.*

**{¶ 15}** Similarly, statutes of repose and limitations have long played a role in the legal systems of this country. In 1828, the United States Supreme Court acknowledged the benefits of statutes of repose and limitations, stating that it wished a statute of limitations, "instead of being viewed in an unfavourable light, as an unjust and discreditable defence, * * * had received such support, as would

have made it, what it was intended to be, emphatically, a statute of repose." *Bell v. Morrison*, 26 U.S. 351, 360, 7 L.Ed. 174 (1828). In *Bell*, the court referred to a statute of limitations but, by modern standards, the law at issue was a statute of repose. The court recognized the statute as "a wise and beneficial law" that "afford[ed] security against stale demands, after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses." *Id.* The high court observed: "It has a manifest tendency to produce speedy settlements of accounts, and to suppress those prejudices which may rise up at a distance of time, and baffle every honest effort to counteract or overcome them." *Id.*

{¶ 16} Almost a hundred years ago, the United States Supreme Court held that a defendant may have a property interest in the protection offered by a statute of limitations that cannot be "deprive[d] * * * without due process of law." *William Danzer & Co., Inc. v. Gulf & Ship Island RR. Co.*, 268 U.S. 633, 637, 45 S.Ct. 612, 69 L.Ed. 1126 (1925). In a more recent case, the court recognized that a statute of repose is a legislative judgment that defendants should be free from liability after a determined amount of time, measured from the date of the defendant's last culpable act. *CTS Corp.*, __ U.S. __, 134 S.Ct. at 2182-2183, 189 L.Ed.2d 62.

{¶ 17} This court has also undertaken a review of statutes of repose and limitations on numerous occasions. In one early examination, we held, "Our statute of limitations fixes a period in which every action, according to its class, must be commenced. It is a statute of repose, and not of presumption; and, unless the suit is commenced in the time limited, cannot be maintained. It is said to be barred." *Kerper v. Wood*, 48 Ohio St. 613, 620, 29 N.E. 501 (1891). Shortly thereafter, this court explained its role in enforcing such laws:

It is not the province of the courts to make exceptions to meet cases not provided for by the legislature. It is no longer the habit of courts

to view with disfavor the plea of the statutes of limitations. Being statutes of repose, designed to secure the peace of society, and protect the individual from being prosecuted upon stale claims, they are to be construed in the spirit of their enactment.

*Townsend v. Eichelberger*, 51 Ohio St. 213, 216, 38 N.E. 207 (1894).

{¶ 18} More recently, this court has continued to uphold the constitutionality of statutes of repose in some circumstances. *See Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, syllabus; *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, paragraph two of the syllabus; *Opalko v. Marymount Hosp., Inc.*, 9 Ohio St.3d 63, 65, 458 N.E.2d 847 (1984). Specifically, we have recognized that statutes of repose do not automatically violate the Ohio Constitution's right-to-remedy provision, Article I, Section 16, because that right " 'applies only to existing, vested rights, and it is state law which determines what injuries are recognized and what remedies are available.' " *Groch* at ¶ 150, quoting *Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 202, 551 N.E.2d 938 (1990). And we, like the United States Supreme Court, have respected the public-policy choices embodied in statutes of repose:

Many policy reasons support this legislation. Just as a plaintiff is entitled to a meaningful time and opportunity to pursue a claim, a defendant is entitled to a reasonable time after which he or she can be assured that a defense will not have to be mounted for actions occurring years before. The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation.

Forcing medical providers to defend against medical claims that occurred 10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, the likelihood that evidence would be untrustworthy due to faded memories, the potential that technology may have changed to create a different and more stringent standard of care not applicable to the earlier time, the risk that the medical providers' financial circumstances may have changed—i.e., that practitioners have retired and no longer carry liability insurance, the possibility that a practitioner's insurer has become insolvent, and the risk that the institutional medical provider may have closed.

Responding to these concerns, the General Assembly made a policy decision to grant Ohio medical providers the right to be free from litigation based on alleged acts of medical negligence occurring outside a specified time period.

*Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 19-21.

{¶ 19} Therefore, this court and the United States Supreme Court agree that statutes of repose are to be read as enacted and not with an intent to circumvent legislatively imposed time limitations. While mindful of Ohioans' constitutional right to a remedy, we undertake our review cognizant that a statute of repose is not an unjust and discreditable defense but rather, a law designed to secure fairness to all parties.

*Ohio's Medical-Malpractice Statute of Repose*

{¶ 20} The Clinic asks us to apply Ohio's medical-malpractice statute of repose to the Antoons' claim, which accrued and vested within the four-year

statute-of-repose period. "The paramount goal in the interpretation or construction of a statute is to ascertain and give effect to the legislature's intent in enacting the statute." *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349, 676 N.E.2d 162 (10th Dist.1996). To determine legislative intent, we must first examine the plain language of the statute. *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997). "[W]e must apply a statute as it is written when its meaning is unambiguous and definite." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). "An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language * * *." *State ex rel. Burrows*, 78 Ohio St.3d at 81.

{¶ 21} R.C. 2305.113(C) provides that the time for bringing a medical-malpractice complaint has an absolute limit:

> (1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.
>
> (2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

{¶ 22} In *Ruther*, we held that R.C. 2305.113(C) is "a true statute of repose." 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 18. We explained that "[t]he statute of repose exists to give medical providers certainty

with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation," *id.* at ¶ 19, and emphasized that "if the General Assembly cannot legislate a statute of repose, medical providers are left with the possibility of unlimited liability indefinitely," *id.* at ¶ 29.

**{¶ 23}** Today, we affirm that R.C. 2305.113(C) is a statute of repose because the time for bringing a suit under the section begins running from the occurrence of the act or omission constituting the alleged basis of the claim. And we find that the plain language of the statute is clear, unambiguous, and means what it says. If a lawsuit bringing a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the basis for the claim, then any action on that claim is barred.

**{¶ 24}** We reject the Antoons' assertion that filing then dismissing a claim will indefinitely suspend the statute of repose by "commencing" the suit on the date of the first filing. The law is clear that once a complaint has been dismissed without prejudice, legally, that action is deemed to never have existed. *DeVille Photography, Inc. v. Bowers*, 169 Ohio St. 267, 272, 159 N.E.2d 443 (1959). Accordingly, in this case, no action on the medical-malpractice claims "commenced" until the second state court complaint was filed in November 2013. By that time, more than four years had passed since the act or omission constituting the alleged basis of the medical claim. Because the action was plainly commenced outside the four-year statute-of-repose period, the trial court correctly granted the Clinic's motion to dismiss.

*Distinguishing* Ruther

**{¶ 25}** The appellate court cited *Ruther* in holding that because the Antoons' malpractice claim had vested, the timeliness of either complaint depends on "the statute of limitations and any tolling provisions." 2015-Ohio-421, ¶ 10. The Antoons similarly quoted *Ruther*'s holding that the "medical-malpractice statute of repose found in R.C. 2305.113(C) does not extinguish a vested right and thus does

not violate the Ohio Constitution, Article I, Section 16," to support their argument that this court must necessarily overturn that case in order to find that the statute can extinguish a vested right. Not so.

{¶ 26} Both the Antoons in their argument and the Eighth District Court of Appeals in its analysis rely on an impermissibly narrow reading of *Ruther*. The circumstance in Ruther, involving an unvested cause of action, was central to our holding in that case. The appellant in *Ruther* had made an as-applied constitutional challenge to R.C. 2305.113(C) regarding a claim that had not vested before the expiration of the statute of repose. In that circumstance, it was reasonable for the court to refer to the statute as "not extinguish[ing] a vested right." *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, syllabus. The facts in the Antoons' case are materially divergent from those presented in *Ruther*, and while today we clarify *Ruther*, our holding in this case is consistent with our holdings therein, finding that the statute of repose does not violate the Ohio Constitution: "A plain reading of Article I, Section 16 reveals that it does not provide for remedies without limitation * * *. [T]he right-to-remedy clause provides that the court shall be open for those to seek remedy 'by *due course of law*.' (Emphasis added.) Article I, Section 16 does not prevent the General Assembly from defining a cause of action." *Id.* at ¶ 12. We observed, "[T]he General Assembly has the right to * * * plac[e] a time limit after which an injury is no longer a legal injury." *Id.* at ¶ 14. These findings support the constitutionality of the medical-malpractice statute of repose and our determination that our holding today does not conflict with *Ruther*. Because consideration of a vested claim was not before us in *Ruther*, our discussion of vested causes of action was made solely in the context of addressing a claim that accrued *after* the statute of repose had expired. That is not the situation here.

*The Antoons' Constitutional Challenge*

{¶ 27} Relying on *Ruther*'s syllabus, the Antoons assert that if R.C. 2305.113(C) extinguishes a vested right, then it violates the Ohio Constitution's

right to remedy. The right-to-remedy clause provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law * * *." Article 1, Section 16, Ohio Constitution. It is well settled that "there is no property or vested right in any of the rules of the common law," so a vested right to a remedy devolves only from the legislature. *Leis v. Cleveland Ry. Co.*, 101 Ohio St. 162, 128 N.E. 73 (1920), syllabus. Consequently, the right to a remedy protects only those causes of action that the General Assembly identifies and for the period of time it determines. *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, at ¶ 12.

{¶ 28} A medical-malpractice claim vests "when a patient discovers or in the exercise of reasonable care and diligence should have discovered the resulting injury." *Ruther* at ¶ 17. This court has defined a vested right as one that is "fixed, settled, absolute, and not contingent upon anything." *Rehor v. Case W. Res. Univ.*, 43 Ohio St.2d 224, 229, 331 N.E.2d 416 (1975). But this court has, in multiple cases, recognized that a party need not be granted an unlimited amount of time to bring a vested cause of action, but must receive only a "reasonable" amount of time in order for a law to pass constitutional muster. *Taylor v. First Resolution Invest. Corp.*, __ Ohio St.3d __, 2016-Ohio-3444, __ N.E.2d __, ¶ 57; *Oaktree Condominium Assn., Inc. v. Hallmark Bldg. Co.*, 139 Ohio St.3d 264, 2014-Ohio-1937, 11 N.E.3d 266, ¶ 1; *Cook v. Matvejs*, 56 Ohio St.2d 234, 237, 383 N.E.2d 601 (1978). *See also Gregory v. Flowers*, 32 Ohio St.2d 48, 54, 290 N.E.2d 181 (1972) ("On the theory that a right to sue once existing becomes a vested right, and cannot be taken away altogether, it does not conclusively follow that the time within which the right may be asserted and maintained may not be limited to a shorter period than that which prevailed at the time the right arose, provided such limitation still leaves the claimant a reasonable time within which to enforce the right").

{¶ 29} For the statute to be constitutional, the General Assembly must have a rational basis for determining the period of time during which a party may bring

suit based on a vested cause of action. *Ruther* at ¶ 21. The presumption in favor of constitutionality is strong. "[E]nactments of the General Assembly [are] constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147, 128 N.E.2d 59 (1955). The statute here, in compliance with the right-to-remedy clause, does not "completely foreclose a cause of action for injured plaintiffs or otherwise eliminate their ability to receive a meaningful remedy." *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 29. Accordingly, R.C. 2305.113(C) is constitutional both when it extinguishes a vested and a nonvested cause of action.

*Ohio's Saving Statute and 28 U.S.C. 1367*

{¶ 30} We do not decide today whether Ohio's saving statute, R.C. 2305.19, or the federal tolling statute, 28 U.S.C. 1367, properly invoked, may allow actions to survive beyond expiration of the statute of repose.

{¶ 31} The Ohio saving statute applies only if a party files a substantially similar action within one year of the dismissal without prejudice. *Children's Hosp. v. Ohio Dept. of Pub. Welfare*, 69 Ohio St.2d 523, 525, 433 N.E.2d 187 (1982) ("The savings statute applies when the original suit and the new action are substantially the same"); R.C. 2305.19(A). In this case, although the federal qui tam action was filed approximately seven months after the state claim was dismissed, it was pleaded solely as a qui tam action and included more than a dozen additional parties. Moreover, as the Antoons acknowledge, the complaints filed in federal court did not expressly assert malpractice claims. Therefore, they were not "substantially the same" as the state court action, and the saving statute is inapplicable.

{¶ 32} The federal tolling statute that the Antoons seek to invoke applies only to state-law claims over which a federal court has exercised supplemental jurisdiction. 28 U.S.C. 1367. In the Antoons' case, the federal court declined to

14

exercise supplemental jurisdiction over the malpractice claims asserted in the proposed second amended complaint. Therefore, the medical-malpractice claims were never "pending" in federal court, so the tolling statute is also inapplicable.[3] 28 U.S.C. 1367.

## CONCLUSION

{¶ 33} Our role in reviewing a statute is not to express agreement or disagreement with the public policy that led to its enactment. "The only judicial inquiry into the constitutionality of a statute involves the question of legislative power, not legislative wisdom." *State ex rel. Bowman v. Allen Cty. Bd. of Commrs.*, 124 Ohio St. 174, 196, 177 N.E. 271 (1931).

{¶ 34} We hold that Ohio's medical-malpractice statute of repose, R.C. 2305.113(C), is constitutional even to the extent that it prohibits bringing suit on a cause of action that has vested. Significant public-policy considerations support granting repose to defendants, and the General Assembly has determined that four years is a reasonable length of time to bring a medical-malpractice claim.

{¶ 35} Accordingly, R.C. 2305.113(C) is a true statute of repose that applies to both vested and nonvested claims. The Antoons brought their accrued claims more than four years after the alleged malpractice; the claims were therefore barred by the statute of repose. We reverse the judgment of the court of appeals and remand the cause to the trial court to enter judgment for the Clinic.

Judgment reversed,

and cause remanded.

O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

---

[3] The Antoons' reference to *Singleton v. Pittsburgh Bd. of Edn.*, W.D.Pa. No. 2:11-cv-1431, 2012 WL 4068381 (Aug. 24, 2012), is unavailing. In that case, the federal magistrate recommended dismissal of all claims against a certain defendant, including state claims, but those claims were actually pending before the court prior to dismissal. *Id.* at *12-14. Here, because the district court denied the Antoons leave to amend their complaint a second time and the medical-malpractice claims were not raised in the original or first amended complaints, the federal court never had supplemental jurisdiction over those claims.

PFEIFER, J., concurs in judgment only, with an opinion.

O'NEILL, J., not participating.

_____

**PFEIFER, J., concurring in judgment only.**

{¶ 36} All the glories of statutes of repose as described by the majority opinion point in one direction: toward protecting people who harm the despised proletariat, who are daring to remedy the wrong done them. Our original Constitution took a different stance. Even before Ohio's statehood, the Constitutional Convention of 1802 guaranteed the right to a remedy for the portion of the Northwest Territory that would become Ohio. Article VIII, Section 7, Constitution of 1802. Phillips, *The Constitutional Right to a Remedy*, 78 N.Y.U.L.Rev. 1309, 1316 (2003), fn. 30. *See also E.W. Scripps Co. v. Fulton*, 100 Ohio App.157, 171, 125 N.E.2d 896 (1955) (Hurd, J. concurring). Today, Article I, Section 16 of the Ohio Constitution still guarantees that "every person, for an injury done him * * * shall have remedy by due course of law." What once was a mighty constitutional oak is left to wither and die at the whim of the General Assembly.

{¶ 37} This case is quite simple. The complaint was filed too late by pro se plaintiffs. They attempted to avail themselves of Ohio's saving statute, R.C. 2305.19(A), but that attempt was ill considered because the federal action relied upon did not allege medical malpractice or seek damages. We should have reversed the judgment of the court of appeals summarily and the story should have ended. Alas, this court saw an opportunity to further assault the fundamental constitutional right to a remedy.

{¶ 38} The majority opinion lauds statutes of repose for having "a long history in Western legal tradition." Majority opinion at ¶ 13. Fair enough—so did slavery.

16

**{¶ 39}** Access to courts and the opportunity to redress a wrong have long been sacrosanct in Ohio. *See* Article VIII, Section 7, 1802 Constitution and Article I, Section 16, 1851 Ohio Constitution. These constitutional rights have been under assault for decades—since at least the 1970s, when the General Assembly enacted former R.C. 2305.11, 1975 Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, 2809, 2810-2811. This statute prohibited minors from bringing medical-malpractice claims more than four years after the negligent act occurred, even if they had not yet reached the age at which the law allowed them to bring suit. *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 273, 503 N.E.2d 717 (1986).

**{¶ 40}** *Mominee* involved a statute of repose, like today's case. In that case, this court rightly concluded that the Ohio Constitution as ratified by the people of Ohio trumped a contrary statute. *Id.* at syllabus. The court today allows the statute of repose to swallow the right-to-a-remedy clause. This should not surprise anyone who has been paying attention. The previously inviolate right to a jury trial of Article VIII, Section 8 of the1802 Constitution, now part of Article I, Section 5 of the Ohio Constitution, has likewise been eviscerated. *See Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 163-174 (Pfeifer, J., dissenting).

**{¶ 41}** *Mominee* was seminal and rightly repudiated a statute of repose. *Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 639 N.E.2d 425 (1994), paragraph two of the syllabus, also repudiated a statute of repose. So did *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 475-476, 715 N.E.2d 1062 (1999). These cases remain good law or, in any event, they have not been overruled. Nevertheless, the court today rebukes the holdings and reasoning of these cases without so much as a passing reference.

**{¶ 42}** I have written extensively about statutes of repose and how they undermine constitutional protections. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 227-246 (Pfeifer, J., concurring in part and

dissenting part). Instead of restating the obvious, I have decided to quote extensively from *Mominee*. That case is so relevant in substance and significance that despite having been written 30 years ago, the concurring opinion still resonates:

Section 16, Article I of the Ohio Constitution states: "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law * * *."

Having roots in the Magna Carta, "access to the courts" provisions, found in many state constitutions, were designed to place some limitation on governmental power. As early as 1882 in *Lafferty v. Shinn* (1882), 38 Ohio St. 46, 48, this court said "[t]hat 'all courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law,' is ordained in the constitution (art. 1, § 16); *and it is not within the power of the legislature to abridge the period within which an existing right may be so asserted as that there shall not remain a reasonable time within which an action may be commenced.* * * * " (Emphasis added.)

\* \* \*

The effect of a statute of repose, at least in the medical malpractice area, is to reduce the doctor's exposure to liability by granting to him immunity from suit after the limitations period has run. Such protection may be justified on strong claims of public policy, and, therefore, not constitutionally infirm under either the equal protection or due process clauses. See, generally, Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications (1977), 55 Tex.L.Rev. 759. The same

18

would not hold true, however, when measured against the "access-to-the-courts" provision of Section 16, Article I of the Ohio Constitution.

It will be argued that in striking down this statute of repose, we will be usurping the prerogatives of the legislature and that no statute of limitations will be safe from our review. Nothing could be further from the truth. The establishment of time limitations on various causes of action is a policy matter within the particular purview and competence of the legislature, but any such legislation must fall if it interferes with a person's constitutionally guaranteed right of access to the courts when that person is asserting a right of action arising at common law.

The action for negligence, upon which today's medical malpractice actions are founded, was well-established in the common law (trespass of the case). Where a right or action existed at common law at the time the Constitution was adopted, that right is constitutionally protected, by the access-to-the-courts provision, from subsequent legislative action which abrogates or impairs that right without affording a reasonable substitute. See, generally, *Gentile v. Altermatt* (1975), 169 Conn. 267, 363 A.2d 1. Cf. *Haskins v. Bias* (1981), 2 Ohio App.3d 297, 441 N.E.2d 842. Thus, through the theory of "constitutional incorporation," one of construction, legislation which serves to abolish or severely impair common-law remedies existing at the time the Constitution was adopted is invalid unless a reasonable substitute is provided for the remedy which is lost. Conversely, where a party would not have had a right to bring an action at common law, either because no cause of action existed or because some bar prevented its assertion,

the cause of action is not constitutionally incorporated by the adoption of the access-to-the-courts provision. If a party received a subsequent right of action, not recognized at common law, either through legislative enactment or judicial pronouncement, that right could properly be abrogated by the legislature even without affording a reasonable substitute. Any right of action created subsequent to the access-to-the-courts provision exists only as a matter of judicial or legislative grace and may be withdrawn at any time.

It is within this context that we must consider the statute of repose set forth in R.C. 2305.11(B). We have already seen that the statute provides for an *absolute* bar of a cause of action for medical malpractice after a four-year period of time has elapsed from the date of the *occurrence*—that is, the date on which the alleged malpractice took place. It can readily be seen that where the injury is not discovered within the prescriptive period, the effect of the repose is to abolish the party's right of action altogether. A person so situated is literally given no opportunity to bring his action because the right to proceed is obliterated before it even *accrues*. In actual effect, this abolition grants the negligent doctor an area of absolute immunity from suit at the expense of the patient's constitutionally guaranteed right to access to the courts. This is especially true of those suffering from some disability such as we have in the cases before us, to wit: not having reached the statutory age of an adult.

Since the bottom-line effect of this statute of repose, R.C. 2305.11(B), is to abolish a common-law right or action which existed at the time the Constitution was adopted, and since the

legislature provided no reasonable alternative remedy or substitute for the one which it has abrogated, this court must hold that R.C. 2305.11(B) is violative of Section 16, Article I of the Ohio Constitution and is, therefore, unconstitutional. "These rights the legislature did not give * * * and the legislature can not take them away. * * * " *Byers v. Meridian Printing Co.* (1911), 84 Ohio St. 408, 422, 95 N.E. 917.

(Emphasis sic and footnotes omitted.) *Mominee*, 28 Ohio St.3d at 290-293, 503 N.E.2d 717 (Douglas, J., concurring).

**{¶ 43}** Article I, Section 16 is not some trivial add-on to the Constitution of this great state. It is part of the Bill of Rights and has been since the first Constitution was ratified in 1802. It currently states, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law * * *." Today the majority opinion modifies this fundamental constitutional provision. Unfortunately, by implication, Article 1, Section 16 now reads thus: All courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law *unless the General Assembly decides that the courts are not open.*

**{¶ 44}** The import of the majority opinion is that negligent medical providers are more important than the people they injure. Any person suffering an injury due to medical negligence must now discover the injury within four years or be foreclosed from recovery, even if the injury is not reasonably discoverable. In the short term, this is not a particularly important case. Not many Ohioans are unable to determine that they have been negligently injured by a medical provider within four years. But the long-term impact of this case is incalculably bad: some toxins are long acting, with unforeseeable consequences.

**{¶ 45}** The Toomer's Corner oak trees in Auburn, Georgia, were intentionally poisoned, but the damage wasn't immediately noticeable. The impact was irredeemable, however, and the trees were eventually removed. http://www.al.com/news/index.ssf/2015/11/harvey_updyke_poisoned_toomers.html. This court's acceptance of the position that the General Assembly can undermine constitutional provisions is poisonous, though not yet irreparable. This case moves us one step closer to the time when the common law will be completely obliterated in Ohio. Today, this court countenances the intolerable concept that Ohioans' right to a remedy exists only through the good graces of the General Assembly. This court is wrong. The right to a remedy is a power reserved to the people by the people in Ohio's Constitution, and it cannot be diminished by statute. I trust that this court will eventually realize its mistake and find the will to protect Ohioans from future encroachments on their constitutional rights.

**{¶ 46}** I concur in judgment only, which is a minor point indeed. I dissent to everything else in the majority opinion.

_____

Brannon & Associates, Dwight D. Brannon, Kevin A. Bowman, and Matthew A. Schultz, for appellees.

Reminger Co., L.P.A., Martin T. Galvin, William A. Meadows, and Brian T. Gannon, for appellants.

Bonezzi Switzer Polito & Hupp Co., L.P.A., Bret C. Perry, and Jason A. Paskan, urging reversal for amicus curiae Academy of Medicine of Cleveland & Northern Ohio.

Squire Patton Boggs (US) L.L.P., Heather L. Stutz, Christopher F. Haas, and Larry J. Obhof; and Sean McGlone, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, and Ohio Osteopathic Association.

Giorgianni Law L.L.C. and Paul Giorgianni, urging affirmance for amicus curiae Ohio Association for Justice.

_____