[Cite as *Pollock v. Brian J. Britt, D.D.S., L.L.C.*, 2021-Ohio-3820.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ROSS J. POLLOCK,                                    :

     Plaintiff-Appellant,                     :

     v.                                              :

BRIAN J. BRITT, D.D.S., L.L.C., ET AL., :

     Defendants-Appellees.               :

No. 110489

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 28, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-928728

---

## *Appearances:*

Lester S. Potash, *for appellant.*

Patrick S. Corrigan, *for appellees* Brian J. Britt, D.D.S.,
L.L.C., and Brian J. Britt, D.D.S.

Davis & Young, Thomas W. Wright, and Matthew P.
Baringer, *for appellee* Michelle Hrnchar, D.D.S.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, Ross J. Pollock ("Pollock"), appeals the dismissal of his complaint and claims the following error:

> The trial court erred in dismissing plaintiff's complaint based on the statute of repose.

We find no error and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} On January 30, 2020, Pollock filed a complaint alleging dental malpractice against defendants-appellees, Brian J. Britt, D.D.S., L.L.C., Brian J. Britt, D.D.S., and Michelle Hrnchar D.D.S. (collectively "defendants"). Pollock alleged that defendants failed to diagnose and treat a lesion depicted on several panoramic x-rays taken in July 2005, August 2008, September 2011, November 18, 2014, and April 2018. As a result of the alleged negligence, a keratocystic odontogenic tumor grew in Pollock's mouth for a period of years, damaged several teeth, and affected his jaw. After the tumor was finally discovered in August 2018, Pollock required multiple surgeries to remove the tumor and damaged teeth and to restore normal function with implants.

{¶ 3} Defendants filed a motion for summary judgment, asserting that Pollock's claim was barred by the medical statute of repose, namely R.C. 2305.113. Defendants argued that the latest "date of occurrence" for purposes of the statute of repose was September 27, 2011, and that, pursuant to R.C. 2305.113(C), Pollock was barred from filing an action related to that occurrence after September 27, 2015.

{¶ 4} Pollock opposed defendants' motion for summary judgment, arguing there were at least ten "occurrences" where defendants should have but failed to recognize, diagnose, and treat his tumor within the four-year statute of repose

period. Pollock cited ten instances documented in his dental record wherein the defendants examined and evaluated his mouth from May 2016 through April 2018. The trial court nevertheless granted the defendants' motion for summary judgment on grounds that Pollock's claim was barred by the applicable statute of repose. Pollock now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 5} In his sole assignment of error, Pollock argues the trial court erred in dismissing his complaint based on the statute of repose. He contends that each incident in a continuing course of negligent conduct is an independent "occurrence of the act or omission constituting the alleged basis of the * * * dental claim" for purposes of the statute of repose. He further asserts that defendants committed an independent act of medical negligence as late as April 3, 2018, less than two years before he filed the complaint. Therefore, he argues, his complaint was not barred by the statute of repose.

## A. Standard of Review

{¶ 6} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, the party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679,

653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## B. Statute of Repose

{¶ 7} A statute of repose is a "statute barring any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." *Black's Law Dictionary* 741 (5th Pocket Ed.2016). R.C. 2305.113(C)[1] establishes a four-year statute of repose for medical malpractice claims and states, in relevant part:

> (1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

> (2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

The limitations period for the statute of repose starts to run "after the occurrence of the act or omission" constituting the basis of the medical malpractice claim. *Id.*

---

[1] R.C. 2305.113(C) provides exceptions for minors and persons of "unsound mind." R.C. 2305.11(D)(1) and (2) also provide limited exceptions for malpractice discovered during the fourth year after treatment and for malpractice that leaves a foreign object in the patient's body.

Unlike the medical malpractice statute of limitations set forth in R.C. 2305.113(A), which calculates time from date "the cause of action accrued," the focus of the statute of repose is on the "occurrence" of medical negligence rather than the resulting injury.

{¶ 8} Pollock argues that his expert identified ten "occurrences" within four years of the filing of the complaint. His expert states in his report that a portion of Pollock's tumor was "clearly visible" in x-rays taken by the defendants on April 3, 2018, less than two years before Pollock filed the complaint on January 30, 202o. Pollock argues the alleged negligence that occurred on April 13, 2018, constitutes an independent "occurrence" within a continuing course of negligent conduct and may, therefore, constitute the "occurrence of the act or omission constituting the alleged basis of the * * * dental claim" for purposes of the statute of repose.

{¶ 9} However, Pollock's complaint alleges that the negligence constituting the basis of his claim occurred in November 2014. Pollock's complaint states, in relevant part:

> 5. On or about November 18, 2014, and during the course and scope of the care and treatment of plaintiff by defendants, individually and acting through their agents, employees, and/or representatives, x-rays were taken of plaintiff's mouth (11/18/2014 x-rays).
>
> 6. The 11/18/2014 x-rays revealed a lesion which was either undetected or, if detected, was considered of no consequence, thus left untreated.
>
> 7. The lesion, as depicted in the 11/18/2014 x-rays, went untreated by defendants, individually and acting through their agents, employees, and/or representatives.
>
> 8. On August 16, 2018, plaintiff visited defendants, individually and acting through their agents, employees, and/or representatives, for

treatment at which time x-rays were taken (8/16/2018) which revealed serious deterioration to plaintiff's mouth which included serious bone loss to plaintiff's mouth and jaw.

9. Defendants, individually and acting through their agents, employees, and/or representatives, were negligent in failing to diagnose/treat the cyst depicted in the 11/18/2014 x-rays, and were negligent in other response to be shown at the time of trial.

10. As a direct and proximate result of the joint, combined, and concurrent negligence of the defendants, of the failure to diagnose and/or treat the lesion depicted in the 11/18/2014 x-rays, plaintiff underwent two surgeries, under general anesthesia, to remove the cyst, along with teeth, bone, and other procedures in an effort to remediate the condition.

11. As a direct and proximate result of the joint, combined, and concurrent negligence of the defendants of the failure to diagnose and/or treat the lesions as depicted in the 11/18/2014 x-rays, plaintiff will require implants and other future treatment in an effort to remediate the condition and restore his dental health.

{¶ 10} According to Pollock's complaint, the incident giving rise to his dental malpractice claim occurred on November 18, 2014. Therefore, the four-year statute of repose required Pollock to file his malpractice complaint on or before November 18, 2018. But he did not file his complaint until January 30, 2020.

{¶ 11} Pollock's expert report also states that the negligence giving rise to his injury occurred on November 18, 2014. However, Pollock's expert further opines that the defendants failed to meet the standard of care in 2005, 2008, and 2011. The expert report states, in relevant part:

Mr. Pollock's initial panoramic x-ray dated 7/12/05 reveals a radiolucency present at the apex of both the mesial and distal roots of tooth #30. There is no indication of any entry into Mr. Pollock's dental records at that time. This is a radiographic anomaly which should have been documented due to the fact the tooth appears to be a virgin tooth, with no indications of decay, fracture, or trauma. There is no indication

of any reported symptoms from Mr. Pollock in the record. The standard of care would require a referral for endodontic or oral surgery consultation to rule out pathology.

Mr. Pollock's panoramic survey dated 8/1/08 reveals * * * the expanding lesion on the mesial aspect of the tooth root #30. With proper referral and treatment at that time[,] treatment could have been limited to the area of the tooth #30. The standard of care would indicate re-taking this image because the primary reason for periodic panoramic images is to image and evaluate 3rd molars, which are not captured on regular scheduled bitewing radiographs. This panorex does reveal progression of the lesion on tooth #30 from the previous film dated 7/12/05. Indicating that the lesion on tooth #30 was not an artifact, but real and pathological in nature.

Mr. Pollock's panoramic survey dated 9/27/11 reveals the radiolucency has now extended beyond the borders of tooth #30 and is encroaching and consuming tooth #29 and the mesial aspect of tooth #31 and also progressed inferiorly and expanded toward the mandibular border of the jaw. This image reveals the lesion is aggressive and involving not only tooth #30 but also teeth on either side and compromising the integrity of the lower jaw itself. Treatment at this time would be much less invasive and have a greater prognosis for Mr. Pollock.

Mr. Pollock's panoramic survey dated 11/18/14 reveals the radiolucency has now progressed mesially to tooth #29, distally to the third molar tooth #32, superiorly to the gingival margin and apically to the border of the mandible. This means the entire lower right jaw is at risk for pathologic fracture resulting in loss of feeling and function for Mr. Pollock.

Mr. Pollock's exam and complete series of radiographs dated 2/21/18 and 4/3/18 reveal the tumor present in the area of tooth #30 but also the involvement and physical displacement of tooth #29, the result of the tumor.

Mr. Pollock was seen 8/16/18 for a periodontal maintenance appointment and a panoramic x-ray was captured. Dr. Michelle Hrnchar saw Mr. Pollock and a diagnosis of radiolucency in the right mandible was discovered and discussed with the patient and a referral was made to an oral surgeon for consultation, treatment, and management of Mr. Pollock's expanding keratocystic odontogenic tumor. This referral was due to the extreme size, location, and a great probability of a pathological fracture and parethesia, or loss of feeling

and function in his jaw. Mr. Pollock's panoramic survey dated 8/16/2018 reveals the lesion has now expanded mesially almost to the midline incorporating tooth #26, 27 and appears to be progressing up the ramus of the mandible distally.

{¶ 12} Pollock's expert identifies multiple "occurrences" of alleged negligence dating back to July 2005. Nevertheless, the expert categorically declares that defendants failed to diagnose Pollock's tumor in September 2011 when treatment would have been "much less invasive" and would have provided a "better prognosis." According to Pollock's expert, the indisputable date of the first "occurrence" happened on September 27, 2011, at the latest, and the four-year statute of repose required Pollock to file his complaint on or before September 27, 2015.

{¶ 13} Despite Pollock's argument to the contrary, R.C. 2305.113(C) does not permit later "occurrences" within a continuing course of negligent conduct to provide the basis of a malpractice claim. The statute of repose expressly bars medical malpractice claims that have occurred but have not yet been discovered, regardless of the reason for discovery. *See Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 11, quoting *Black's Law Dictionary* 1636 (10th Ed.2014). ("A statute of repose bars 'any suit that is brought after a specified time since the defendants acted * * * even if this period ends before the plaintiff has suffered a resulting injury.'"); *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 21 ("R.C. 2305.113(C) does not bar a vested cause of action, but prevents a cause of action from vesting more than four years after the breach of the duty of care. Therefore, it is a true statute of repose.").

{¶ 14} We note that in *Vucsko v. Cleveland Urology Assoc.*, 8th Dist. Cuyahoga No. 107498, 2019-Ohio-1992, we reversed an order granting summary judgment based on the statute of repose where the defendants failed to diagnose and treat an injury the plaintiff experienced in 2015, that resulted from a surgery that occurred in 2010. Although the plaintiff's 2015 injury was related to the prior surgery, we found that the harm caused by the failure to diagnose and treat the new injury was "independent from the surgery." *Id.* at ¶ 21. In contrast to the plaintiff in *Vucsko*, who sustained a new injury years later, Pollock's alleged injury remained the same for years; the tumor continued to grow until it was finally discovered in August 2018. We, therefore, find *Vucsko* distinguishable from the facts of this case, where a single course of negligent conduct beginning no later than 2014, constitutes the basis of Pollock's dental malpractice claim.

{¶ 15} In *Ruther*, the Ohio Supreme Court explained the many policy reasons behind the medical malpractice statute of repose:

> Just as a plaintiff is entitled to a meaningful time and opportunity to pursue a claim, a defendant is entitled to a reasonable time after which he or she can be assured that a defense will not have to be mounted for actions occurring years before. The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation.
>
> Forcing medical providers to defend against medical claims that occurred 10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, the likelihood that evidence would be untrustworthy due to faded memories, the potential that technology may have changed to create a different and more stringent

standard of care not applicable to the earlier time, the risk that the medical providers' financial circumstances may have changed—i.e., that practitioners have retired and no longer carry liability insurance, the possibility that a practitioner's insurer has become insolvent, and the risk that the institutional medical provider may have closed.

Responding to these concerns, the General Assembly made a policy decision to grant Ohio medical providers the right to be free from litigation based on alleged acts of medical negligence occurring outside a specified time period. This decision is embodied in Ohio's four-year statute of repose for medical negligence, set forth in R.C. 2305.113(C). The statute establishes a period beyond which medical claims may not be brought even if the injury giving rise to the claim does not accrue because it is undiscovered until after the period has ended.

*Id.* at ¶ 19-21.

{¶ 16} In *Antoon*, the Ohio Supreme Court reaffirmed the policy decisions articulated in *Ruther* and added that "statutes of repose are to be read as enacted not with an intent to circumvent legislatively imposed time limitations." *Antoon* at ¶ 19. The court further stated that

the plain language of the statute is clear, unambiguous, and means what it says. If a lawsuit bringing a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the basis for the claim, then any action on that claim is barred.

*Antoon* at ¶ 23.

{¶ 17} Both Pollock's complaint and his expert allege that defendants committed malpractice in 2011 and 2014, and that the defendants' failure to identify and treat his tumor at those times allowed Pollock's tumor "to expand and encompass the entire right mandible, which resulted in the loss of multiple teeth." (Expert report p. 5.) Yet, Pollock did not file the complaint until January 2020. Pollock's complaint alleges that a single, continuing course of negligence caused his

injury, and that the negligence occurred more than four years before he filed his complaint. His malpractice claim is, therefore, barred by the statute of repose.

{¶ 18} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

ANITA LASTER MAYS, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR